No. 23-20169

# In the United States Court of Appeals for the Fifth Circuit

IN RE BOBBY LUMPKIN, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,
*Petitioner.*

On Petition for Writ of Mandamus
to the United States District Court
for the Southern District of Texas, Houston Division

## PETITIONER'S OPPOSED MOTION TO STAY DISTRICT COURT PROCEEDINGS PENDING RESOLUTION OF MANDAMUS LITIGATION

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

JUDD E. STONE II
Solicitor General
Judd.Stone@oag.texas.gov

ARI CUENIN
Deputy Solicitor General

NATALIE D. THOMPSON
Assistant Solicitor General

GWENDOLYN S. VINDELL
Assistant Attorney General

Counsel for Petitioner Bobby Lumpkin

# CERTIFICATE OF INTERESTED PERSONS

No. 23-20169

IN RE BOBBY LUMPKIN, DIRECTOR, TEXAS DEPARTMENT OF
CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,
*Petitioner.*

Under the fourth sentence of Fifth Circuit Rule 28.2.1, petitioner, as a governmental party, need not furnish a certificate of interested persons.

/s/ Natalie D. Thompson
NATALIE D. THOMPSON
*Counsel of Record for*
*Petitioner Bobby Lumpkin*

i

# TABLE OF CONTENTS

Page

Certificate of Interested Persons ............................................................... i

Table of Contents ....................................................................................... ii

Table of Authorities ................................................................................. iii

Introduction ................................................................................................ 1

Background .................................................................................................. 2

Argument ..................................................................................................... 4

    I.   The Director Is Likely to Prevail on His Mandamus Petition. .................... 5

        A.   The Director has a clear right to relief. ............................................ 5

        B.   The Director has no other adequate means to obtain relief. ............... 9

        C.   Mandamus is appropriate under the circumstances. ........................ 11

    II.   The State Will Suffer Irreparable Harm If the District Court
        Proceedings Are Not Stayed Pending Resolution of the
        Mandamus Petition. .................................................................... 12

    III.  The Remaining Stay Factors Favor the Director. ................................... 18

Conclusion ................................................................................................. 19

Certificate of Conference ......................................................................... 20

Certificate of Service ................................................................................ 20

Certificate of Compliance ........................................................................ 20

# TABLE OF AUTHORITIES

Page(s)

**Cases:**

*AFC Indus., Inc. v. Guinn*,
384 F.2d 15 (5th Cir. 1967) ................................................................. 12

*Ayestas v. Stephens*,
817 F.3d 888 (5th Cir. 2016), *vacated on other grounds sub nom.*
*Ayestas v. Davis*, 138 S. Ct. 1080 (2018) ....................................... *passim*

*Ayestas v. Thaler*,
462 F. App'x 474 (5th Cir. 2012) (per curiam) ............................... 14

*Ex parte Ayestas*,
No. WR-69,674-02, 2020 WL 7234770 (Tex. Crim. App. Dec. 9,
2020) (per curiam) ................................................................................ 11

*Banister v. Davis*,
140 S. Ct. 1698 (2020) ........................................................... 1, 5, 6, 7

*Brecht v. Abrahamson*,
507 U.S. 619 (1993) ............................................................................. 10

*Calderon v. Thompson*,
523 U.S. 538 (1998) ............................................................................... 8

*In re Cathey*,
857 F.3d 221 (5th Cir. 2017) (per curiam) ........................................ 8

*Crutsinger v. Davis*,
930 F.3d 705 (5th Cir. 2019) (per curiam) ................................. 17, 18

*Davila v. Davis*,
137 S. Ct. 2058 (2017) ......................................................................... 9

*Demahy v. Schwarz Pharma., Inc.*,
702 F.3d 177 (5th Cir. 2012) (per curiam) ........................................ 6

*Edwards v. Vannoy*,
141 S. Ct. 1547 (2021) ........................................................................ 11

*Feldberg v. Quechee Lakes Corp.*,
463 F.3d 195 (2d Cir. 2006) ................................................................ 7

*Ford v. Davis*,
910 F.3d 232 (5th Cir. 2018) .............................................................. 11

*In re Gee*,
941 F.3d 153 (5th Cir. 2019) (per curiam) ................................ 5, 9, 12

iii

*Gonzalez v. Crosby,*
545 U.S. 524 (2005) .............................................................. 7

*Gonzalez v. Thaler,*
565 U.S. 134 (2012) ...........................................................8, 12

*Harrington v. Richter,*
562 U.S. 86 (2011)................................................................ 10

*Heck v. Triche,*
775 F.3d 265 (5th Cir. 2014).................................................. 6

*Hill v. McDonough,*
547 U.S. 573 (2006) .............................................................17

*Landis v. N. Am. Co.,*
299 U.S. 248 (1936) ............................................................. 18

*Moore v. Tangipahoa Par. Sch. Bd.,*
507 F. App'x 389 (5th Cir. 2013) (per curiam)...................13

*Nken v. Holder,*
556 U.S. 418 (2009) ...........................................4, 12, 13, 18

*Phillips v. United States,*
668 F.3d 433 (7th Cir. 2012) ................................................. 7

*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott,*
734 F.3d 406 (5th Cir. 2013) ................................................. 4

*Rhines v. Weber,*
544 U.S. 269 (2005) ............................................................. 18

*Shinn v. Ramirez,*
142 S. Ct. 1718 (2022) ........................................ 9, 10, 11, 17

*Shoop v. Twyford,*
142 S. Ct. 2037 (2022) .........................................................17

*Sines v. Kessler,*
325 F.R.D. 563 (E.D. La. 2018)...........................................16

*Texas v. E.P.A.,*
829 F.3d 405 (5th Cir. 2016) ...............................................13

*Veasey v. Abbott,*
870 F.3d 387 (5th Cir. 2017) (per curiam).......................... 18

*Vielma v. Eureka Co.,*
218 F.3d 458 (5th Cir. 2000) ..............................................7-8

*In re Volkswagen of Am., Inc.,*
545 F.3d 304 (5th Cir. 2008) (en banc) ...........................5, 10

iv

*In re Webster*,
   605 F.3d 256 (5th Cir. 2010) .......................................................... 8
*Wetzel v. Lambert*,
   565 U.S. 520 (2012) (per curiam)................................................ 11

**Constitutional Provisions, Statutes, and Rules:**

28 U.S.C.:
   § 2244(b) ...........................................................................7, 8, 10
   § 2244(b)(2)(B)(i)............................................................... 8
   § 2244(b)(3)(A) .................................................................. 8
   § 2254 ............................................................................... 12
   § 2254(e)(1) ....................................................................11
   § 2254(e)(2) ....................................................................... 9

Fed. R. App. P. 8(a)(2)(A)(ii) ................................................. 2, 4

Fed. R. Civ. P.:
   6(a) ................................................................................... 12
   6(b) ................................................................................. 6, 7
   6(b)(2) ................................................................................ 6
   34(c) .................................................................................15
   45 .....................................................................................15
   45(a)(1)(A)(iii) .................................................................15
   45(d)(1) ...........................................................................15
   45(d)(2)(B) ...................................................................4, 16
   45(d)(3) ............................................................................16
   45(d)(3)(A) .......................................................................16
   45(d)(3)(A)(i)....................................................................16
   45(d)(3)(A)(iv)...................................................................16
   59 ...................................................................................... 6
   59(e) .......................................................................5, 6, 7, 8
   60 ...................................................................................... 6
   60(b) ..............................................................................5, 8

S.D. Tex. Loc. R.:
   7.3.................................................................................. 2, 3
   7.4(A) ................................................................................. 4

Antiterrorism and Effective Death Penalty Act of 1996 .....................9, 12

**Other Authorities:**

9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* (3d ed. 2023) ......................................................................16

## Introduction

Carlos Ayestas is a death-sentenced Texas state inmate who has been seeking habeas relief in the federal courts for nearly fifteen years. Ayestas's "one chance to bring a federal habeas challenge to his conviction," *Banister v. Davis*, 140 S. Ct. 1698, 1704 (2020), concluded long ago. But the district court is now giving Ayestas a second chance by permitting him to litigate new claims based on "newly discovered" evidence—evidence that this Court has already held Ayestas cannot submit because he failed to "exercise reasonable diligence." *Ayestas v. Stephens*, 817 F.3d 888, 901 (5th Cir. 2016), *vacated on other grounds sub nom. Ayestas v. Davis*, 138 S. Ct. 1080 (2018). The result: Ayestas was permitted to file an amended petition raising two new claims seven years after final judgment was entered in the lower court a second time. App.187-215. The Director sought to dismiss Ayestas's amended petition on jurisdictional grounds, but the district court refused, instead authorizing Ayestas to seek extensive third-party discovery. App.352-53, 362-64.

Because the district court clearly and indisputably erred in refusing to dismiss Ayestas's post-judgment attempts to litigate unauthorized second-or-successive claims, and because the Director had no other remedy, the Director sought mandamus relief from this Court. *See* Pet. Writ Mandamus, ECF. No. 2-1 (filed Apr. 20, 2023). The Director simultaneously moved the district court to stay the proceedings below, including a stay of the court's discovery order. Supp.App.016-17. However, while the Director's motion was pending, the district court entered a second discovery order, this time imposing new deadlines that coincide with the response to and consideration period of the Director's motion to stay.

Supp.App.043-44; *see* S.D. Tex. Loc. R. 7.3 (stating opposed motions will be submitted to the court twenty-one days from filing). Namely, by order entered eight days after the Director filed his motion to stay, the lower court now requires Ayestas to serve his discovery requests on both the Director and any relevant non-parties by May 8, 2023, thus triggering discovery response times and potential litigation. Supp.App.044; *see infra* Argument II. In other words, though the Director sought to stay the proceedings when no discovery requests had yet been served, the lower court chose to accelerate discovery deadlines. The lower court's order is effectively a denial of the Director's stay request. *See* Fed. R. App. P. 8(a)(2)(A)(ii).

The Director thus now moves this Court for a stay of the lower court proceedings, including the lower court's discovery orders. Engaging in discovery litigation in a case where the lower court lacks jurisdiction to entertain or order any of it would cause irreparable harm to both the Director and non-parties. That, coupled with the likelihood the Director will succeed on his mandamus petition, shows that a stay is warranted. The Director requests that the Court grant this motion **by 5:00pm May 17, 2023**. In the alternative, the Director requests a temporary administrative stay to allow this Court sufficient time to consider the Director's motion to stay and petition for a writ of mandamus.

## Background

The Director has summarized this litigation's extensive history in his currently pending mandamus petition before this Court. *See* Pet. Writ Mandamus 2-5. Here, the Director provides a brief overview relevant to the instant motion to stay.

In August 2021, the lower court entered an order ostensibly reopening long-final judgment. *See* App.172. Ayestas was then permitted to file an amended petition raising two new habeas claims. App.187-215. Ayestas also moved for authorization to seek twenty-three categories of third-party discovery spanning a thirty-year period. App.175-77; App.182-84; App.302-04. The Director, in compliance with local rules, filed an answer and motion for summary judgment, and opposed Ayestas's discovery motion. App.220-98; App.314-46.

On March 16, 2023, the lower court denied the Director summary judgment and granted Ayestas leave to seek the requested discovery. App.364. The lower court ordered the Director to "file specific objections to [Ayestas's] discovery requests within 30 days." App.363. Thirty days after the lower court's order, the Director filed an advisory noticing the lower court that he had not yet been served with discovery requests. Supp.App.002-04.

The Director's petition for a writ of mandamus was docketed in this Court the next day. Pet. Writ. Mandamus, ECF No. 2-1. The Director also filed a motion to stay proceedings in the district court, including the court's order granting discovery, pending resolution of the mandamus litigation. Supp.App.011-33. Because neither the Director nor any non-parties were under any imminent discovery deadlines at the time, the Director did not seek an expedited ruling from the lower court or seek a stay from this Court. By local rule, the Director's opposed motion will not be submitted to the district court for consideration until May 11, 2023. *See* S.D. Tex. Loc. R. 7.3.

On April 29, 2023, the district court entered a new discovery order requiring Ayestas to serve his discovery requests on the Director "and any non-party entities or individuals that may possess relevant knowledge or materials" by May 8, 2023, three days before Ayestas's response to the Director's stay request is due. Supp.App.044; S.D. Tex. Loc. R. 7.4(A) (responses to opposed motions must be filed by the submission day). Further, the district court provided the Director with only ten days to file objections to Ayestas's discovery demands. Supp.App.044. And by operation of the Rules of Civil Procedure, any non-party served with discovery requests must serve Ayestas with written objections by May 22, 2023, at the *latest*. *See* Fed. R. Civ. P. 45(d)(2)(B) (requiring written objections to a subpoena to be served on the requesting party "before the earlier of the time specified for compliance [with the subpoena] or 14 days after the subpoena is served").

Though the Director's motion to stay remains pending, the lower court's sua sponte acceleration of discovery deadlines "failed to afford the relief requested." Fed. R. App. P. 8(a)(2)(A)(ii). The Director now moves this Court to stay the lower court proceedings while the Court resolves the pending mandamus litigation.

### ARGUMENT

A stay is warranted because the Director satisfies all four factors: (1) likelihood of success on the merits, (2) irreparable harm, (3) no substantial harm to other parties, and (4) the public interest. *See Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 410 (5th Cir. 2013) (citing *Nken v. Holder*, 556 U.S. 418, 425-26 (2009)).

## I.  The Director Is Likely to Prevail on His Mandamus Petition.

The Director is likely to prevail on his mandamus petition, as the district court clearly and indisputably lacks jurisdiction over the underlying proceedings. Petitioners are entitled to mandamus relief where: 1) their right to the writ is clear and indisputable; 2) they have no other adequate means to obtain relief; and 3) the writ is appropriate under the circumstances. *In re Gee*, 941 F.3d 153, 157 (5th Cir. 2019) (per curiam); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (en banc). A right to mandamus is clear and indisputable when a district court clearly abuses its discretion. *In re Volkswagen*, 545 F.3d at 311. Here, as explained in greater detail in the Director's petition, all three prongs are met.

### A.  The Director has a clear right to relief.

The Director has a clear right to relief because the lower court indisputably lacked jurisdiction to accept Ayestas's new claims. Ayestas initially sought to litigate his new habeas claims via a series of post-judgment motions in 2015. App.44-50, 53-61. This Court has already affirmed the district court's denial. *Ayestas v. Stephens*, 817 F.3d at 901. Ayestas's later Rule 60(b) motion seeking to reopen that decision, *see* App.75-104, was itself a second-or-successive habeas application because it, like the 2015 motions, had only one purpose: to add new habeas claims.

*Banister* did not change that result for three reasons. First, *Banister* recognized that Rule 59(e) does not allow new habeas claims. *See* 140 S. Ct. at 1708 (emphasizing that "a prisoner may invoke [Rule 59(e)] only to request 'reconsideration of matters properly encompassed' in the challenged judgment," so "[c]ourts will not entertain arguments that could have been but were not raised before the just-issued

decision"). Thus, even if Ayestas had sought leave to add his new claims within Rule 59(e)'s 28-day window (which cannot be extended), he could not have done so. *Id.* at 1704; *see* Fed. R. Civ. P. 6(b). On this basis alone, the district court was correct to deny Ayestas's 2015 post-judgment attempts to add new claims, and *Banister* has no impact on that result.

Second, Rule 59(e) relief must be invoked within 28 days of judgment—full stop. *See Banister*, 140 S. Ct. at 1708 (Rule 59(e) "gives a prisoner only a narrow window to ask for relief—28 days, with no extensions"); *see also* Fed. R. Civ. P. 6(b)(2) (prohibiting courts from "extend[ing] the time to act under Rule [59(e)]"); *Heck v. Triche*, 775 F.3d 265, 271 n.5 (5th Cir. 2014) ("The district court purportedly granted Triche an extension of time beyond the twenty-eight-day deadline to file his Rule 59 motion, but that deadline is jurisdictional and cannot be extended by the court."). Though Ayestas did file a Rule 59(e) motion within that narrow window, that motion addressed his remanded ineffective-assistance claims, not the memo-based ones. *See* App.4-42. Ayestas's new claims first materialized on the court's docket outside the 28-day window. App.44-50 (motion to amend filed January 9, 2015); App.53-61 ("supplemental" Rule 59(e) motion filed January 14, 2015). The claims could not be considered part of a timely Rule 59(e) motion. *See Demahy v. Schwarz Pharma., Inc.*, 702 F.3d 177, 182 n.2 (5th Cir. 2012) (per curiam) ("If the motion [asking the court to reconsider a prior ruling] was filed within twenty-eight days after the entry of the judgment, the motion is treated as though it was filed under Rule 59, and if it was filed outside of that time, it is analyzed under Rule 60."). That takes Ayestas's 2015 post-judgment motions outside *Banister*'s allowance for filings that are "part of

producing the final judgment granting or denying habeas relief." 140 S. Ct. at 1710. Even applying *Banister*, Ayestas's 2015 motions are second-or-successive applications because they "asserted [a new] federal basis for relief from a state court's judgment of conviction." *Gonzalez v. Crosby*, 545 U.S. 524, 530 (2005).

Third, Rule 59(e) relief may be invoked only once. *Banister*, 140 S. Ct. at 1710 (a Rule 59(e) motion is a "one-time effort" to amend the district court's judgment). So Ayestas could not serially "supplement" his Rule 59(e) motion and remain outside the reach of 28 U.S.C § 2244(b). *See id.*; *Feldberg v. Quechee Lakes Corp.*, 463 F.3d 195, 197 (2d Cir. 2006) ("Permitting the [plaintiffs] to supplant their timely yet insufficient 'placeholder' Rule 59(e) motion . . . with their subsequent augmented filing . . . would afford them an easy way to circumvent Rule 6(b)'s prohibition on granting an enlargement of time."). Nor should petitioners be permitted to arbitrarily convert a post-judgment motion raising new claims—filed 58 days after final judgment—into a Rule 59(e) motion simply to evade section 2244(b)'s hard jurisdictional limits.

And Ayestas's "amended petition" does not take him outside that rule either. While an amendment is generally a "further iteration[] of the first habeas application," *Banister*, 140 S. Ct. at 1705, "the time to amend the petition expires once the district court makes its decision," *Phillips v. United States*, 668 F.3d 433, 435 (7th Cir. 2012). Here, the lower court made its decision in 2014. *See* App.2. That decision was final and appealable, *see Banister*, 140 S. Ct. at 1710, and indeed, it was appealed and affirmed. *Ayestas v. Stephens*, 817 F.3d at 901. Ayestas could not file an amended petition without reopening final judgment. *See Vielma v. Eureka Co.*, 218

F.3d 458, 468 (5th Cir. 2000). But he should have been prevented from doing that under either Rule 60(b) or Rule 59(e), so his amended petition is a second-or-successive application the lower court has no jurisdiction to consider. The lower court indisputably erred in doing otherwise.

Though the lower court rejected the Director's successiveness argument, the court also took it upon itself to assess whether Ayestas's amended petition was permissible under section 2244(b). *See* App.353. This too was clear and indisputable error, as only the courts of appeals can authorize a second-or-successive application. *See* 28 U.S.C. § 2244(b)(3)(A) ("Before a second or successive application" may be "filed in the district court," the petitioner must obtain authorization from the court of appeals.); *Gonzalez v. Thaler*, 565 U.S. 134, 142 (2012). The district court also indisputably erred in its application of that provision. Notwithstanding this Court's diligence determinations—which should have foreclosed any assertion that Ayestas met subsection 2244(b)(2)(B)(i)—the lower court incorrectly suggested that Ayestas might proceed under an actual-innocence-of-the-death penalty theory. *See* App.353 ("The claims themselves raise questions concerning the constitutionality of Ayestas's death sentence."). But actual innocence of the death penalty has no place in the successiveness analysis. *See In re Cathey*, 857 F.3d 221, 233 n.76 (5th Cir. 2017) (per curiam); *In re Webster*, 605 F.3d 256, 258 (5th Cir. 2010). And even if it did, Ayestas's new claims do not qualify for that proviso anyway. *See Calderon v. Thompson*, 523 U.S. 538, 558-60 (1998) (actual innocence of the death penalty requires showing "that no reasonable juror would have found [the petitioner] *eligible*

*for* the death penalty in light of the new evidence" (emphasis added)). The Director has a clear right to relief.

## B.   The Director has no other adequate means to obtain relief.

Mandamus is "[reserved] for special situations where the unlawful exercise of federal jurisdiction imposes extraordinary harms" and there is no other means of relief. *In re Gee*, 941 F.3d at 166. One such situation is where the error imposes litigation burdens beyond those ordinarily attending an erroneous failure to dismiss. *See id*. at 167-68. Another is where the district court's error intrudes on state sovereignty. *See id*. These special circumstances exist here.

As indicated below, *see infra* Argument II, the extensive discovery ordered by the district court is not only irremediable, it also "aggravate[s] the harm to federalism that federal habeas review necessarily causes" because it introduces potentially years of additional delay in the execution of Ayestas's sentence. *Davila v. Davis*, 137 S. Ct. 2058, 2069-70 (2017). The Supreme Court recently reiterated that AEDPA bars new evidence in federal habeas proceedings unless something "external to the defense" prevented the petitioner from developing it in state court. *Shinn v. Ramirez*, 142 S. Ct. 1718, 1733 (2022); *see* 28 U.S.C. § 2254(e)(2). Three courts, including this one, have already recognized that Ayestas "did not exercise reasonable diligence in attempting to discover the memorandum earlier." *Ayestas v. Stephens*, 817 F.3d at 901. Ayestas is responsible for his counsel's failure to identify and present the memorandum to the state courts, so Ayestas cannot introduce it in federal habeas. *See Ramirez*, 142 S. Ct. at 1736.

Yet the lower court authorized Ayestas extensive discovery into his new memo-based claims. The overly broad discovery Ayestas seeks could easily result in a delay of years. And the resulting "harm—inconvenience to witnesses, parties and other—will already have been done by the time the case is tried and appealed, and the prejudice suffered cannot be put back in the bottle." *In re Volkswagen*, 545 F.3d at 319. Mandamus "is not here used as a substitute for an appeal, as an appeal will provide no remedy for a patently erroneous" exercise of jurisdiction. *Id.* There is no other adequate remedy at law.

Moreover, *see infra* Argument II, this case involves issues of comity and state sovereignty. "Federal intrusions into state criminal trials frustrate both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights." *Brecht v. Abrahamson*, 507 U.S. 619, 635 (1993). Indeed, federal habeas as a general matter "disturbs the State's significant interest in repose for concluded litigation, denies society the right to punish some admitted offenders, and intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). Disregarding barriers to federal-habeas relief, like section 2244(b), imposes "substantial costs" on the states and interferes with the "finality, comity, and the orderly administration of justice." *Ramirez*, 142 S. Ct. at 1732-33.

These harms are compounded where, as here, over twenty years have elapsed since the State's presumptively valid conviction and sentence were entered and where three different courts had already rejected Ayestas's attempts to litigate these very same claims. As this Court explained over seven years ago, Ayestas was not

10

diligent in identifying the foundation of his new claims, *Ayestas v. Stephens*, 817 F.3d at 901, and that explanation was seconded by the state courts when they dismissed Ayestas's claims as an abuse of the writ, *see Ex parte Ayestas*, No. WR-69,674-02, 2020 WL 7234770, at *1 (Tex. Crim. App. Dec. 9, 2020) (per curiam); *Ford v. Davis*, 910 F.3d 232, 234-35 (5th Cir. 2018) (holding where the CCA had dismissed Ford's state habeas application as an abuse of the writ, the court had "necessarily found that Ford knew or could have reasonably known about the [factual basis of his claims] before filing his first petitions," and that finding was entitled to deference under section 2254(e)(1)). Another seven years have gone by since Ayestas first discovered his new evidence.

Allowing him to litigate these claims now, twenty-six years after his trial, "pos[es] the most daunting difficulties for the prosecution." *Wetzel v. Lambert*, 565 U.S. 520, 525 (2012) (per curiam) (discussing retrial); *see also Edwards v. Vannoy*, 141 S. Ct. 1547, 1554 (2021) ("When previously convicted perpetrators of violent crimes go free merely because the evidence needed to conduct a retrial has become stale or is no longer available, the public suffers, as do the victims"). Letting him pursue his new claims now threatens a "profound injury to the powerful and legitimate interest in punishing the guilty, an interest shared by the State and the victims of crime alike." *Ramirez*, 142 S. Ct. at 1731.

## C.  Mandamus is appropriate under the circumstances.

Finally, though mandamus relief is discretionary, this Court should exercise that discretion in this case. "The clearest traditional office of mandamus and prohibition has been to control jurisdictional excesses, whether the lower court has acted

without power or has refused to act when it had no power to refuse." *In re Gee*, 941 F.3d at 158. Accepting Ayestas's second-or-successive habeas application without authorization is just such an excess. *See Gonzalez v. Thaler*, 565 U.S. at 142. It is particularly troubling where AEDPA would bar authorization in the first place.

## II. The State Will Suffer Irreparable Harm If the District Court Proceedings Are Not Stayed Pending Resolution of the Mandamus Petition.

**A.** Given the fast-approaching costs upon continued litigation in this case—costs, including discovery, which cannot be undone even if in fact the lower court lacks jurisdiction—a stay of the proceedings while this Court considers the Director's outcome-determinative mandamus petition is appropriate. *See AFC Indus., Inc. v. Guinn*, 384 F.2d 15, 19 (5th Cir. 1967) (stay "pending the outcome of litigation between the same parties involving . . . controlling issues is an acceptable means of avoiding unnecessary duplication of judicial machinery"). As explained above, *see* Argument I.B, development of Ayestas's claim is fundamentally incompatible with Congress's goal in enacting AEDPA. And imposing litigation burdens on States without "good cause" is a specific harm to be avoided under Rule 6(a) of the Rules Governing Section 2254 Cases. The State will suffer an injury that is "categorically irreparable," *Nken*, 556 U.S. at 435, if forced to litigate new claims while this mandamus litigation is pending.

For example, Ayestas seeks documents from almost thirty years of capital-prosecution history in Harris County. *See* App.302 (requesting documents from 1979 through 2008). He demands that the State determine "every defendant that was *or*

*could have been* charged with capital murder" and to compile all the demographic information of each individual. *See* App.303 (item number 2) (emphasis added). He asks, without substantive or temporal limitation, for the entire "homicide case files" of any and all foreign national and Hispanic defendants who were or could've been charged with capital murder. *Id.* (item numbers 3 and 4). He also asks for "[a]ny and all correspondence" in his own case, without limitation to the subject matter or date of that correspondence. *Id.* (item number 5). Further, he asked for disciplinary files and other personnel files for every person who signed the disputed memo or was otherwise involved with its creation. *Id.* (item numbers 12 through 14). And acknowledging that Harris County has never asserted that it withheld the memo from Ayestas in this case, he seeks post-decision searches for evidence that would overcome adverse diligence findings. App.304 (item numbers 18 through 22).

The irreparable burdens of this discovery—digging through decades-old case files in potentially hundreds of cases, determining if documents are responsive, deciding whether and to what extent to assert any privilege, and asserting those objections as necessary—are manifest.

**B.**    The State will also suffer irreparable sovereignty injuries. Absent a stay of the lower court proceedings, the Director—and third parties—will suffer irreparable injury because the lower court's orders present serious issues of jurisdiction, comity, and equity. *See Texas v. E.P.A.*, 829 F.3d 405, 434 (5th Cir. 2016) (a State suffers an "institutional injury" from the "inversion of . . . federalism principles . . ."); *see Moore v. Tangipahoa Par. Sch. Bd.*, 507 F. App'x 389, 399 (5th Cir. 2013) (per curiam) (finding that a State suffers irreparable harm when an injunction "would frustrate

the State's program"). Indeed, Ayestas's case has been in federal court for nearly fifteen years. *See* Fed. Writ Pet. (filed Sept. 11, 2009), ECF No. 1. Ayestas has had two rounds of appeal and even obtained two remands from the Supreme Court. *See Ayestas v. Thaler*, 462 F. App'x 474 (5th Cir. 2012) (per curiam); *Ayestas v. Stephens*, 817 F.3d at 901. Ayestas has also litigated the exact issues the lower court has permitted him to proceed on—including the question of his diligence—for over eight years. Not only did the lower court apparently reopen final judgment to allow Ayestas another chance to litigate his new claims, but the court also authorized Ayestas to seek 23 categories of evidence—including District Attorney's Office records spanning three decades—despite the numerous procedural hurdles that stand in Ayestas's way.

Ayestas's discovery-related scheduling proposals involved *thirteen* steps, beginning with initial requests, fact discovery deadlines, expert reports, amended pleadings, depositions, and culminating with an evidentiary hearing. *See* App.180; App.183. And Ayestas's discovery requests involved a third-party county prosecutor's office, which would itself need to engage in significant discovery litigation over production of thirty years of homicide case files, charging decisions, and other documents. *See* App.302-04. At the time the Director filed his mandamus petition in this Court and the accompanying motion to stay in the lower court, the harm to the Director and potential non-parties was sometime in the future. That's because, though the parties and the court stood on the precipice of significant, protracted evidentiary development on claims this Court and the state courts have already determined were not diligently discovered, Ayestas had not yet triggered that

litigation because he had not yet served discovery requests on any party. Because Ayestas had not yet even taken step one, the Director sought a stay in the lower court within the parameters provided for the normal disposition of motions.

The lower court's April 29 discovery order changed that. Without a request from either party, and before the Director's motion to stay was submitted to it for consideration, the lower court accelerated the beginning of the discovery litigation. Now, three days before the Director's motion to stay is submitted to the lower court, Ayestas will be required to serve the Director with his discovery requests. *See* Supp.App.043-44. The Director will be required to comply with his discovery deadline—in a case where the district court lacks jurisdiction—just ten days later. Supp.App.044. And the Director's stay motion in the district court would not even be fully briefed by that time. *See* S.D. Tex. Loc. R. 7.4(E) (a moving party's reply brief is due seven days after the opponent's response is filed).

Worse, Ayestas will serve any non-parties with discovery requests at the same time he serves the Director. Supp.App.044. Federal Rule of Civil Procedure 45 governs the form and procedure for parties to seek documentary evidence from third parties. *See* Fed. R. Civ. P. 34(c) ("As provided in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection."). Subpoenas seeking the production of documents must direct the non-party to produce such documents "at a specified time and place." *Id.* R. 45(a)(1)(A)(iii). While the Rules instruct that a party issuing a subpoena must "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," *Id.* R. 45(d)(1), they do not otherwise specify a minimum amount of time after service

that an issuing party can require compliance, i.e., the production of documents. Thus, until Ayestas serves his subpoenas on the relevant non-parties on Monday, May 8, 2023, it is unknown how long any non-parties will have to comply with his requests.

What is known is that a non-party will be able to challenge Ayestas's subpoenas via two procedural mechanisms. *First*, the non-party may serve Ayestas with written objections. *See id*. R. 45(d)(2)(B). If the non-party chooses to do so, however, it must serve those objections "before the *earlier* of the time specified for compliance or 14 days after the subpoena is served." *Id*. (emphasis added). This means that non-parties will have fourteen days at *most* to start compiling responsive documents or preparing written objections at risk of waiver. *See* 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2463 (3d ed. 2023) ("A failure to object within the fourteen-day period usually results in wavier of the contested issue.").

*Second*, a non-party may file a motion to quash or modify the subpoena. *See* Fed. R. Civ. P. 45(d)(3). A motion to quash is not subject to the same 14-day requirement as written objections, but such motion must still be made "timely," *id*. R. 45(d)(3)(A), which generally means "within the time set in the subpoena for compliance." *Sines v. Kessler*, 325 F.R.D. 563, 567 (E.D. La. 2018). Thus, if Ayestas *were* to require a non-party to comply with his subpoena earlier than fourteen days after service, the non-party may have grounds to quash, but it would need to do so within the designated compliance period. *See* Fed. R. Civ. P. 45(d)(3)(A)(i), (iv) (requiring district court to quash or modify subpoena upon timely motion where subpoena "fails to allow a reasonable time to comply" or "subjects a person to undue

burden"). Under either mechanism, May 8, 2023, starts the clock for the non-parties to decide how best to respond to Ayestas's overly broad and burdensome discovery requests, all while the Director's motion to stay has still not even been submitted to the lower court for consideration.

It's unclear why the district court imposed these deadlines to overlap with the pendency of the motion to stay—neither party requested the imposition of such deadlines, and neither party even filed a motion seeking affirmative relief on Ayestas's discovery requests. The district court could have awaited the disposition of the Director's motion to stay, or it could have simply denied the motion outright and imposed the new discovery deadlines. Instead, it is forcing both parties and non-parties to engage in discovery litigation while the motion to stay remains pending.

The district court has effectively denied the Director's motion to stay, which will cause irreparable harm. While "a federal habeas court may *never* 'needlessly prolong' a habeas case," *Ramirez*, 142 S. Ct. at 1739, that is precisely what has happened here. *See Shoop v. Twyford*, 142 S. Ct. 2037, 2045 (2022). The lower court's decision to disregard significant barriers to relief, and to compound those errors by ordering Ayestas to begin the extensive discovery process, imposes "substantial costs" on the State and interferes with "finality, comity, and the orderly administration of justice." *Ramirez*, 142 S. Ct. at 1732-33. As this Court has recognized over and again, the State has a "strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Crutsinger v. Davis*, 930 F.3d 705, 709 (5th Cir. 2019) (per curiam) (quoting *Hill v. McDonough*, 547 U.S. 573, 584 (2006)).

## III. The Remaining Stay Factors Favor the Director.

**A.** A stay will not injure Ayestas. Until the lower court ordered Ayestas to do otherwise, Ayestas had let over  amonth pass without serving any discovery requests on any party or nonparty. And Ayestas has continuously litigated this case in a manner that has delayed final judgment, so it's difficult to see how further delay would not benefit him. Indeed, it is an axiom of capital litigation that death-sentenced petitioners routinely seek to inject such delay into proceedings themselves. *See Rhines v. Weber*, 544 U.S. 269, 277-78 (2005) ("In particular, capital petitioners might deliberately engage in dilatory tactics to prolong their incarceration and avoid execution of the sentence of death."). Where Ayestas felt no urgency to seek discovery immediately following the lower court's authorization, any claim of urgency or harm now would be plainly manufactured.

**B.** A stay is in the public interest. When, as here, the State seeks a stay pending appeal, "its interest and harm merge with that of the public." *Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017) (per curiam) (citing *Nken*, 556 U.S. at 435). The State has a "strong interest in enforcing its criminal judgments without [delay or] undue interference from the federal courts." *Crutsinger*, 930 F.3d at 709. Requiring the parties to continue with considerable evidentiary development before a court that— if the Director is correct—lacks jurisdiction would by the type of "clear case" of inequity for which discretionary stays are appropriate. *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936).

## Conclusion

The Court should stay the district court proceedings pending review and resolution of the pending mandamus petition. In the alternative, the Court should enter a temporary administrative stay while it considers this motion. The Director requests a ruling on the motion to stay as soon as possible, but in any event, no later than 5:00pm on Wednesday, May 17, 2023.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Judd E. Stone II
Solicitor General

Brent Webster
First Assistant Attorney General

Ari Cuenin
Deputy Solicitor General

/s/ Natalie D. Thompson
Natalie D. Thompson
Assistant Solicitor General
Natalie.Thompson@oag.texas.gov

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Gwendolyn S. Vindell
Assistant Attorney General

Counsel for Petitioner Bobby Lumpkin

## CERTIFICATE OF CONFERENCE

I hereby certify that on May 3, 2023, lead counsel for Ayestas, Lee Kovarksy, confirmed that he is opposed to the foregoing motion and will file a response, but did not indicate when the opposition will be filed.

/s/ Natalie D. Thompson
NATALIE D. THOMPSON

## CERTIFICATE OF SERVICE

On May 3, 2023, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Natalie D. Thompson
NATALIE D. THOMPSON

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5,073 words; and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Natalie D. Thompson
NATALIE D. THOMPSON