No. 23-20169

# In The
# United States Court of Appeals
# For the Fifth Circuit

*In re Bobby Lumpkin, Director, Texas Department of Criminal Justice, Correctional Institutions Division,*

———————

ON PETITION FOR WRIT OF MANDAMUS
TO THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

———————

**RESPONDENT CARLOS MANUEL AYESTAS'S, A/K/A DENNIS HUMBERTO ZELAYA COREA'S, RESPONSE TO PETITION FOR WRIT OF MANDAMUS**

———————

Lee B. Kovarsky
Phillips Black, Inc.
727 East Dean Keeton Street
Jon 5.231
Austin, TX 78705
(434) 466-8257

Sheri Lynn Johnson
Cornell Law School
240 Myron Taylor Hall
Ithaca, NY 14853
(607) 255-6478

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

The undersigned counsel of record certifies that the following listed persons and entities as described by Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

**Respondent:**

Carlos Manuel Ayestas, a/k/a Dennis Humberto Zelaya Corea
*Represented by*:

Lee B. Kovarsky
Phillips Black, Inc.

Sheri Lynn Johnson
Cornell Law School

**Petitioner**

Bobby Lumpkin, Director, Texas Department of Criminal Justice
Correctional Institutions Division
*Represented by*:

Judd Edward Stone, II
Ari Cuenin
Natalie Deyo Thompson
Gwendolyn Suzanne Vindell
Office of the Texas Attorney General

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Respondent Ayestas does not believe that oral argument is necessary because Petitioner has no colorable claim to mandamus relief. However, should the Court feel that it would benefit from oral argument on any of the issues in the case, Respondent Ayestas welcomes the opportunity to provide such argument at the Court's convenience. Undersigned counsel Lee Kovarsky, who would give the oral argument, respectfully notifies the Court that he is traveling with his family between July 4 and July 17, 2023, and that he will be out of the country for most of that time.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................... 1

STATEMENT OF JURISDICTION ................................................ 2

ISSUE PRESENTED .................................................................... 3

STATEMENT OF THE CASE ...................................................... 3

SUMMARY OF THE ARGUMENT ............................................. 10

ARGUMENT ............................................................................... 13

I.  THE DISTRICT COURT DID NOT "CLEARLY AND INDISPUTABLY" ERR. .................................................... 14

    A.  There Is No "Clear And Indisputable Error" In Refusing To Treat Rule 59(e) Motion As A Successive Petition. ................................ 14

    B.  There Is No "Clear And Indisputable Error" In Refusing To Treat The Rule 60(B) Motion As A Successive Petition. ............................... 21

II.  THE DIRECTOR CANNOT SHOW THAT APPELLATE RELIEF AFTER FINAL JUDGMENT IS INADEQUATE. ........................................ 24

III.  THE DIRECTOR CANNOT SHOW THAT MANDAMUS IS APPROPRIATE UNDER THE CIRCUMSTANCES. ......................... 29

CONCLUSION ............................................................................ 31

# TABLE OF AUTHORITIES

**Page**

## Cases

*Ayestas v. Davis*,
  138 S. Ct. 1080 (2018) ...................................................................... 6, 7

*Ayestas v. Davis*,
  933 F.3d 384 (5th Cir. 2019) .................................................................... 7

*Ayestas v. Stephens*,
  817 F.3d 888 (5th Cir. 2016) ........................................................... 5, 6, 16

*Ayestas v. Stephens*,
  826 F.3d 214 (5th Cir. 2016) ................................................................... 6

*Ayestas v. Stephens*,
  No. 15-70015 (5th Cir. May 23, 2016) .................................................. 6

*Banister v. Davis*,
  140 S. Ct. 1698 (2020) .............................................................. passim

*Butz v. Mendoza-Powers*,
  474 F.3d 1193 (9th Cir. 2007) .............................................................. 23

*Calderon v. U.S. Dist. Ct. for Cent. Dist. of California*,
  163 F.3d 530 (9th Cir. 1998), *abrogated on other grounds by Woodford v.
  Garceau*, 538 U.S. 202 (2003 ...................................................... 26, 28

*Chapman v. Bd. of Cnty. Comm'rs of Douglass Cnty.*,
  107 U.S. 348 (1883) .............................................................................. 29

*Charles v. Daley*,
  799 F.2d 343 (7th Cir. 1986) ................................................................ 17

*Cheney v. U.S. Dist. Ct. for D.C.*,
  542 U.S. 367 (2004) .............................................................. passim

*Chery v. Bowman*,
  901 F.2d 1053 (11th Cir. 1990) ........................................................... 17

*Demahy v. Schwarz Pharma, Inc.*,
  702 F.3d 177 (5th Cir. 2012) ............................................................... 18

*Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*,
  693 F.3d 1195 (10th Cir. 2012) ........................................................... 17

# TABLE OF AUTHORITIES

**Page**

*Ex parte Fahey*,
  332 U. S. 258 (1947) ................................................................ 12

*Falcon v. Gen. Tel. Co.*,
  815 F.2d 317 (5th Cir. 1987) .................................................... 9

*Feldberg v. Quechee Lakes Corp.*,
  463 F.3d 195 (2d Cir. 2006) ................................................... 19

*Gilkers v. Vannoy*,
  904 F.3d 336 (5th Cir. 2018) ................................................. 21

*Gonzalez v. Crosby*,
  545 U.S. 524 (2005) ...................................................... 2, 8, 21

*Hertz Corp. v. Alamo Rent-A-Car, Inc.*,
  16 F.3d 1126 (11th Cir. 1994) ............................................... 17

*In re Am. Lebanese Syrian Associated Charities, Inc.*,
  815 F.3d 204 (5th Cir. 2016) ................................................. 14

*In re Atl. City R.R. Co.*,
  164 U.S. 633 (1897) ............................................................ 14

*In re DePuy Orthopaedics, Inc.*,
  870 F.3d 345 (5th Cir. 2017) ....................................... 13, 24, 28

*In re Franklin*,
  832 F. App'x 340 (5th Cir. 2020) .......................................... 15

*In re Gee*,
  941 F.3d 153 (5th Cir. 2019) ....................................... 12, 24, 25, 26

*In re Robinson*,
  917 F.3d 856 (5th Cir. 2019) ........................................... 22, 23

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) ................................................. 14

*Phillips v. U.S.*,
  668 F.3d 433 (7th Cir. 2012) ........................................... 19, 20

*Roche v. Evaporated Milk Ass'n*,
  319 U.S. 21 (1943) .............................................................. 24

# TABLE OF AUTHORITIES

**Page**

*Thomas v. Lumpkin*,
   995 F.3d 432 (5th Cir. 2021) ................................................................. 15

*U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*,
   513 U.S. 18 (1994) ................................................................................. 9

*United States v. Morales*,
   No. 20-2877, 2021 WL 5755079 (3d Cir. Dec. 3, 2021) ..................... 16

*Uranga v. Davis*,
   893 F.3d 282 (5th Cir. 2018) ......................................................... 11, 22

*Webber v. Mefford*,
   43 F.3d 1340 (10th Cir. 1994) ............................................................. 17

*Will v. United States*,
   389 U. S. 90 (1967) ............................................................................. 13

*Williams v. Thaler*,
   602 F.3d 291 (5th Cir. 2010) ......................................................... 4, 16

**Other Authorities**

12 MOORE'S FEDERAL PRACTICE - CIVIL § 59.31 (2023) ...................... 17

## INTRODUCTION

As the Director tells it, a confused district court blundered into a jurisdictional error, prolonging definitive resolution of claims that it previously denied on procedural grounds. But the district court knew exactly what it was doing, and it ordered relief that was legally and equitably justified. The post-judgment relief followed from (1) the Supreme Court's decision in *Banister v. Davis*, 140 S. Ct. 1698 (2020), and (2) the Director's admission that the charging memorandum at issue was not previously available to Ayestas's counsel because it was confidential work product.

To prove the "clear and indisputable" error that mandamus requires, the Director must prove either that Ayestas's December 16, 2014 Rule 59(e) motion or his February 5, 2021 Rule 60(b) motion was a successive petition. But the legal authority on these questions indicates that the district court did not err at all, much less that it erred clearly and indisputably. The Director must also establish that a direct appeal would be inadequate, which requires him to show some harm other than the ordinary expense and inconvenience of litigation. To make that showing, he invokes a generalized interest in "sovereignty," but recognizing that interest as a ground for mandamus relief would transform habeas cases into piecemeal mandamus litigation that follows whenever a state loses a potentially dispositive argument.

1

The last mandamus requirement, that relief be equitably appropriate, looms particularly large. First, rather than seek timely mandamus relief for the post-judgment order at issue, the Director delayed—spending twenty months urging the district court to reject Ayestas's claims on non-jurisdictional grounds. Second, the entire reason the case is in this post-judgment posture is because the Director misrepresented the availability of the charging memorandum, thereby tainting prior inquiry into whether it would have been discovered by diligent counsel. And in what seems to be an attempt to exaggerate the appearance of harm, the Director has deceptively presented the scope of and schedule for discovery in the district court.

Ayestas respectfully requests that this Court vacate the stay and then deny the Petition for a Writ of Mandamus ("Mandamus Petition") in due course.

## STATEMENT OF JURISDICTION

The district court has jurisdiction over Ayestas's Rule 59(e) and Rule 60(b) motions, which are not second-or-successive habeas applications under *Banister v. Davis*, 140 S. Ct. 1698 (2020), and *Gonzalez v. Crosby*, 545 U.S. 524 (2005), respectively. This Court has jurisdiction to issue a writ of mandamus.

## ISSUE PRESENTED

Is mandamus relief appropriate when controlling precedent establishes that neither Ayestas's Rule 59(e) motion from 2014 nor his Rule 60(b)(6) motion from 2021 was a successive habeas petition?[1]

## STATEMENT OF THE CASE

As the Office of the Harris County District Attorney ("HCDA") prepared to prosecute Carlos Ayestas for murder, it drafted a charging memorandum that detailed two reasons for seeking the death penalty. *See, e.g.*, App.082. The prosecutor who prepared this memorandum, Kelly Siegler, included Ayestas's non-citizenship as one of the reasons. RespSuppApp.048.



(This document is referred to herein as the "Siegler Memorandum" or "Memorandum."[2]) Ayestas was eventually convicted and sentenced to death.

---

[1] Ayestas does not take issue with the second or third Issues Presented ("IPs") by the Director. Ayestas does not maintain that he satisfies the exceptions permitting litigation of successive petitions, nor does he claim that he's entitled to discovery on the merits of a claim that is jurisdictionally foreclosed.

[2] Kelly Siegler advanced the recommendation to her superiors on the basis of Ayestas's noncitizenship. The circumstances under which the strikethrough appeared, and the degree to which it affects the constitutional claims, remains a matter of factual dispute.

App.084. He pursued appeals and completed an initial round of state post-conviction proceedings, and then he filed a federal habeas petition. App.084-87.

On December 16, 2014, Ayestas filed a Rule 59(e) Motion to Alter or Amend the Judgment. App.004-042 (Petitioner's App. Exh. 2). Eight days later, his federal habeas counsel discovered the Siegler Memorandum while conducting a routine review of the HCDA's case file. On January 9, 2015, Ayestas sought to amend his Rule 59(e) motion to add claims arising out of the discovery of the Siegler Memorandum. App.044-051 (Petitioner's App. Exh. 3). On January 14, 2015, while his Rule 59(e) motion was pending, Ayestas filed additional motions necessary to ensure that the amendment took place as part of the Rule 59 litigation. App.053-61 (App. Exh. 4). On January 21, 2015, the Director opposed these motions, argued that the attempted amendment was a successive petition, and insisted—inaccurately, as it turns out—that the Siegler Memorandum was available to prior counsel because they could have discovered it with reasonable diligence. RespSuppApp.002-017; RespSuppApp.019-28.

Prior to the Supreme Court's decision in *Banister v. Davis*, 140 S. Ct. 1698 (2020), circuit precedent required the district court to treat any attempt to amend in the Rule 59(e) posture as a successive petition. *See* App.063-068 (Petitioner's App. Exh. 5); App.070-073 (Petitioner's App. Exh. 6); *see also Williams v. Thaler*, 602 F.3d 291, 302 (5th Cir. 2010) (setting forth now-overturned rule about Rule 59(e)

motions in habeas cases). Despite Ayestas's vehement insistence that HCDA treated the Siegler Memo as confidential work product, *see* RespSuppApp.034-43, the district court was also influenced by the Director's repeated claims that trial counsel could have obtained the Siegler Memorandum with reasonable diligence. *See*, *e.g.*, RespSuppApp.025 ("[T]he factual predicate for the new claims—the 1995 prosecution report—could have been discovered much earlier had Ayestas exercised due diligence."); *id.* ("[T]here is absolutely no indication that the report was not in those very same files prior to his filing his original federal habeas application in September 2009."); RespSuppApp.004 ("Despite the apparent availability of this document for quite some time, this is the first time Ayestas has attempted to raise such a claim in any court."); RespSuppApp.006 ("[I]t is clear that the factual predicate for the new claims—the 1995 prosecution report—could have been discovered much earlier had Ayestas exercised due diligence."); RespSuppApp.007 ("Therefore, he should have raised these claims in his original federal petition because the factual predicate of the claim was available."); RespSuppApp.010 ("Ayestas still cannot demonstrate any form of diligence because the 'evidence' he uses to support his new claims has always been available.").

Ayestas appealed, but the Fifth Circuit affirmed and refused to permit the amendment necessary to present his Memorandum-based claims. *See Ayestas v. Stephens*, 817 F.3d 888 (5th Cir. 2016). The Fifth Circuit, however, *did not* base its

5

decision on any determination that the Memorandum-based claims were successive and jurisdictionally barred. Instead, it invoked the mandate rule, determining that adjudication of the claims was outside the scope of a prior remand. *Id*. at 899. It also credited the Director's representation regarding the Memorandum's availability when it decided that reasonably diligent counsel would not have discovered it, refusing to stay the case to permit exhaustion of the Memorandum-based claims.[3] *See Ayestas*, 817 F.3d at 900-92.[4] The Panel ultimately revised its opinion on rehearing to clarify that, when it referred to reasonable diligence of prior counsel, it was not referring to the "diligence of federal habeas counsel in locating the memo. It was the diligence of Ayestas's trial counsel that we were describing." *Ayestas v. Stephens*, 826 F.3d 214, 215 (5th Cir. 2016).

During certiorari proceedings before the U.S. Supreme Court, the Director finally acknowledged that the Siegler Memorandum was not available to trial counsel because the HCDA treated it, like it treated all such memos, as confidential

---

[3] The Director's misrepresentations about the availability of the Siegler Memorandum continued in the Fifth Circuit. For example: "[T]he panel correctly held that Ayestas's attempt to excuse this lack of diligence by blaming the State and relying on the self-serving assumption that it would have been futile to ask the State to produce work product was unavailing." Resp. to Pet. for Rehearing at 9, *Ayestas v. Stephens*, No. 15-70015 (5th Cir. May 23, 2016).

[4] The words "2244(b)" and "successive" appear nowhere in this Court's prior opinions, and the term "jurisdiction" appears only when describing the requirement that the Fifth Circuit certify appeals. *See* 817 F.3d at 894-95. The portion of the Fifth Circuit opinion on the Memorandum-based claims passingly referred to some merits-based adjudication, but that portion of the opinion plainly refers to the *other* claims that were before the Court. 817 F.3d at 901. The passage states that "The district court did not err in concluding Ayestas's trial counsel and his state habeas attorneys were not ineffective." *Id.* Of course, the Memorandum-based claims were not IATC claims, and the district court had not rejected them on the merits.

6

work product. Brief in Opposition ("BIO") at 18 n.10, *Ayestas v. Davis*, 138 S. Ct. 1080 (2018) (No. 16-6795) ("The fact that [the Siegler Memorandum] is privileged explains why it was not voluntarily turned over to [Ayestas's] counsel during the criminal trial."). While the Supreme Court did not grant certiorari on the Memorandum-based issues, it did grant certiorari and reverse the lower federal courts on an ineffective-assistance-of-trial-counsel ("IATC") issue. *Ayestas v. Davis*, 138 S. Ct. 1080, 1098-101 (2018). In so doing, the Supreme Court vacated this Court's 2016 opinion. *Id.* at 1095. When the Fifth Circuit issued a new opinion denying relief on the IATC issue, it made no mention of the Memorandum-based claims. *See Ayestas v. Davis*, 933 F.3d 384 (5th Cir. 2019).

After Ayestas failed to obtain relief from the Supreme Court, the Court decided *Banister*, 140 S. Ct. 1698. *Banister* established that the district court's prior determination—that Rule 59(e) motions should be analyzed as successive petitions—was incorrect. *Id.* at 1702. Following *Banister*, Ayestas initiated state-court proceedings to exhaust his Siegler Memorandum claims. The Texas Court of Criminal Appeals dismissed his subsequent state application. *See* RespSuppApp.050-51. Ayestas then initiated this Rule 60(b) litigation, asserting *Banister* and the Director's misrepresentation as grounds to reopen the judgment and to revisit the 2015 orders refusing amendment. App.090-95. In that motion, he not only addressed the jurisdictional issues that are the subject of this Mandamus

Petition, but he also demonstrated that he was entitled to relief under the standards set forth in the text of Rules 59(e) and 60(b) themselves.[5]

On August 12, 2021, the district court granted Ayestas's Rule 60(b) motion to reopen the judgment. App.165-73 (Petitioner's App. Exh. 10). In so doing, it determined that (1) under *Gonzalez v. Crosby*, 545 U.S. 524 (2005), his Rule 60(b) attack on the 2015 order refusing amendment was not a successive petition because that order was a "previous ruling which precluded a merits determination"; (2) Ayestas was entitled to post-judgment relief under Rule 60(b); (3) his Rule 59(e) motion from 2015 was not a successive petition; (4) its consideration was not foreclosed by the mandate rule, which contains a new-evidence exception; and (5) "Ayestas has demonstrated his diligence in pursuing" the Memorandum-based claims. App.168-72. On November 2, 2021, the district court reaffirmed that it "granted . . . Ayestas's motion for relief from judgment," "vacated the [district] court's previous order denying Ayestas's motion to amend," and "granted him leave to file an amended petition." App.217-18.

Ayestas then filed an Amended Petition, App.187-215 (Petitioner's App. Exh. 14), which the Director answered by asserting several procedural defenses and

---

[5] The IPs present only the jurisdictional issue of whether the post-judgment motions are successive habeas petitions. Ayestas does not understand the non-jurisdictional issues—whether he meets the standards for true Rule 60(b) or Rule 59(e) relief—to be before this Court. If the inquiry is enlarged beyond the IPs, he respectfully requests an opportunity to brief those other issues.

moving for summary judgment. App.220-98 (Petitioner's App. Exh. 16). The Director later supplemented his Answer to add even more procedural defenses. RespSuppApp.054-59. The parties thereafter disputed whether discovery should be permitted under Habeas Rule 6. App.300-46 (Petitioner's App. Exh. 17-18). The order that denied the Director's summary judgment motion and permitted discovery also alluded to the Director's prior misrepresentation: "Evidence suggests that the Siegler Memo was not disclosed to Ayestas's defense counsel, but was withheld as attorney work product." App.354. The Court repeatedly referred to the initial disclosure of the memorandum as "accidental," and underscored that "Ayestas present[ed] evidence that the [HCDA] withheld the Siegler memo until its accidental discovery well into his federal habeas proceedings." App.356.[6] In response to the Director's arguments it was bound by this Court's 2016 opinion—and in addition to the law-of-the-case exceptions identified in earlier orders (App.170)—the district court observed (correctly) that the 2016 "judgment was vacated," App.355, extinguishing its precedential effect.[7]

---

[6] This determination reflects the Director's course-reversal in the BIO, but also other evidence. Billing records show that state post-conviction counsel and his investigators reviewed the HCDA file four times before filing the initial state application. RespSuppApp.126-27. Post-conviction counsel signed a declaration stating that he has no recollection of having seen the Siegler Memorandum and would have remembered it if he had. RespSuppApp.135. And there is a letter showing that HCDA's Assistant General Counsel told Ayestas's postconviction lawyer that it would let the lawyer view the file except for "attorney work product or other material made confidential by law." RespSuppApp.131.

[7] *See U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 22 (1994) ("[V]acatur clears the path for future relitigation of the issues between the parties and eliminates a judgment . . . .");

Ayestas's motion for discovery under Habeas Rule 6 contained several proposed discovery items, and the district court ordered the Director to file objections to those items by April 17, 2023, with "no exceptions." On April 28, after the Director did not comply, the district court issued another order emphasizing that it had "ordered the respondent to file any objections to discovery" by April 17. Nevertheless, it accommodated the Director by giving him another chance to object to the discovery requests, which Ayestas was to file on May 8. This Court stayed the district court litigation before the discovery requests were filed. Dkt. 33.

## SUMMARY OF THE ARGUMENT

To prevail here, the Director has to show that (1) the district court clearly and indisputably erred, (2) ordinary appellate remedies are inadequate, and (3) the equities justify mandamus relief. *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 381 (2004). The Director's arguments fall short in several dispositive respects, precedent cuts his allegations of legal error off at every turn, and he cannot meet any of these requirements.

The underlying allegation of legal error separates into distinct questions about whether either the Rule 59 motion from 2015 or the Rule 60(b) motion from 2021 was a successive petition. The Director does not just fall short of the clear-and-

---

*Falcon v. Gen. Tel. Co.*, 815 F.2d 317, 320 (5th Cir. 1987) ("[T]o vacate a judgment is to take away from it any precedential affect. In essence, when a judgment is vacated all is effectually extinguished.") (citations and quotations omitted).

indisputable threshold that mandamus relief requires; precedent stands squarely against him. On the Rule 59(e) issue, *Banister* held that such motions are not successive petitions, even if they raise new claims. *See* 140 S. Ct. at 1703 n.2 ("[C]ourts may consider *new arguments* based on an intervening change in controlling law and *newly discovered or previously unavailable evidence*.") (internal quotations omitted and emphasis added). There is also a rich tradition, supported by longstanding authority, permitting parties to supplement timely Rule 59(e) motions that remain pending. Indeed, the overwhelming weight of authority reflects the legal principle that, while a valid Rule 59(e) motion remains pending, there is not yet final judgment. *See Banister*, 140 S. Ct. at 703.

The Director's allegation that the Rule 60(b)(6) motion is a successive petition is similarly impossible to square with authority. In 2015, the district court refused to permit the amendment necessary to reach the merits. And *Gonzalez* makes clear that a Rule 60(b) attack on a procedural holding that "precluded a merits determination" is not subject to the strictures of 28 U.S.C. § 2244(b). Because Ayestas sought his amendment to add the Memorandum-based claims in 2015, those claims are not "new" in the sense contemplated by *Gonzalez*. In *Uranga v. Davis*, 893 F.3d 282, 284 (5th Cir. 2018), this Court directly addressed the question now before the Court, holding that an order refusing amendment was a "previous ruling … which precluded a merits determination" and that a post-judgment attack on that order "did

not seek to add a new ground for relief." *Id.* at 285. *Uranga* extinguishes the need for further inquiry on the Rule 60(b) question.

With respect to the second mandamus requirement, the Director struggles to articulate the inadequacy of ordinary appellate remedies. He must show some harm from delay that goes beyond the ordinary expense and inconvenience of litigation. He settles on a harm to "sovereignty" that materializes whenever a state habeas respondent loses a potentially dispositive argument in district court. But the cases that recognize sovereignty as a mandamus-worthy interest deal with situations in which parties "seek sweeping review of an entire body of state law" or "seek structural injunctions that would give the district court de facto control of state law." *In re Gee*, 941 F.3d 153, 166 (5th Cir. 2019). If adopted, the Director's theory of mandamus-able sovereignty harm would work a disastrous revolution in § 2254 adjudication—transforming habeas cases into serialized, piecemeal litigation on the Fifth Circuit's mandamus docket.

Finally, mandamus relief is discretionary, and the equities disfavor the Director. He waited *twenty months* to seek mandamus relief against the Rule 60(b) order at issue here. The only reason the case is even in a post-judgment posture is because he misrepresented the availability of the Memorandum during earlier phases of the litigation. And the Director has attempted to confuse this Court about the scope

and schedule for discovery below, in an apparent attempt to exaggerate the perception of abuse.

## ARGUMENT

"Mandamus is a 'drastic and extraordinary' remedy 'reserved for really extraordinary causes.'" *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 381 (2004) (quoting *Ex parte Fahey*, 332 U. S. 258, 259–260 (1947)). Since a mandamus writ "is one of 'the most potent weapons in the judicial arsenal,'" the party seeking its issuance must demonstrate that (1) the district court clearly and indisputably erred, (2) it has no other adequate means to attain the desired relief, and (3) it deserves the benefit of equitable discretion under the circumstances. *Cheney*, 542 U.S. at 380 (quoting *Will v. United States*, 389 U. S. 90, 107 (1967)); *see also In re DePuy Orthopaedics*, *Inc.*, 870 F.3d 345, 350 (5th Cir. 2017). The Director cannot demonstrate *any* of these things, let alone *all* of them.

With respect to the strength of his underlying legal argument, it is not just that the Director falls short of the "clear and indisputable" threshold; judicial precedent cuts heavily against him. With respect to the adequacy of appellate remedies, the Rule 60(b) order merges into the final judgment and the Director has been unable to articulate any concrete harms beyond the inconvenience of litigation. Finally, and with respect to equities, the Director has engaged in gamesmanship on multiple fronts—including his (1) decision to wait almost two years to seek mandamus relief

13

from the Rule 60(b) order at issue; (2) years-long misrepresentation of the Siegler Memorandum's availability and (3) deceptive account of discovery litigation in the district court. This Court should deny the Mandamus Petition.

## I. THE DISTRICT COURT DID NOT "CLEARLY AND INDISPUTABLY" ERR.

Even on questions of jurisdiction, a party seeking mandamus relief "must do more than prove merely that the court erred … but that it clearly and indisputably erred." *In re Am. Lebanese Syrian Associated Charities, Inc.*, 815 F.3d 204, 206 (5th Cir. 2016) (internal quotation marks omitted). And there is no clear and indisputable error unless the district court's decision is "patently erroneous." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 310 (5th Cir. 2008). Although it is true that the *refusal to exercise or to reach* questions of jurisdiction in the district court is often a basis for mandamus review, mandamus relief for a decision to *exercise* jurisdiction is exceedingly rare. *See In re Atl. City R.R. Co.*, 164 U.S. 633, 635 (1897).

### A. There Is No "Clear And Indisputable Error" In Refusing To Treat Rule 59(e) Motion As A Successive Petition.

The Director first argues that Ayestas's 2015 motion to amend, made in the Rule 59(e) posture, was itself a successive petition. Mandamus Petition at 10-12. The Director's argument centers on "three limitations unique to Rule 59(e) motions": (1) that a Rule 59(e) motion cannot add new habeas claims; (2) that Rule 59(e) contains a strict 28-day period for filing, and (3) that Rule 59(e) allows a "one-

time effort" to amend the district court's judgment. Mandamus Petition at 9-11. These arguments all ignore clear and longstanding precedent about Rule 59(e), which forecloses any finding of clear-and-indisputable error.

The Director's first "limitation," which is that "a Rule 59(e) motion cannot add new habeas claims," is simply unsupported by case law. *See* Mandamus Petition at 10. *Banister* categorically holds that arguments raised in Rule 59(e) motions are not successive petitions. 140 S. Ct. at 1708 ("The upshot, after AEDPA as before, is that Rule 59(e) motions are not second or successive petitions, but instead a part of a prisoner's first habeas proceeding."). *Banister* also makes clear that this categorical rule extends to Rule 59(e) motions that raise new claims: "[C]ourts may consider *new arguments* based on an intervening change in controlling law and newly discovered or previously unavailable evidence." 140 S. Ct. at 1703 n.2 (internal quotations omitted and emphasis added). And in applying *Banister*, the Fifth Circuit has repeatedly held that arguments raised in Rule 59 motions are not to be treated as successive petitions, period. "[T]he Supreme Court recently held that Rule 59(e) motions do not constitute successive habeas applications and that the rationale of [*Gonzalez v. Crosby*] does not apply to such motions." *In re Franklin*, 832 F. App'x 340, 341 (5th Cir. 2020). As one member of this Panel explained, "[*Banister*] held that Rule 59(e) motions should not be recategorized as successive applications *regardless of their contents*." *Thomas v. Lumpkin*, 995 F.3d 432, 440 (5th Cir. 2021)

(Southwick, J.) (emphasis added). In the face of this precedent, the Director cites not one case recognizing his preferred jurisdictional distinction between Rule 59(e) motions that raise new claims and those that do not.

The second Rule 59(e) "limitation" that the Director asserts as a basis for successive-petition treatment involves the 28-day window that the Rule itself specifies. Mandamus Petition at 10. Per the Director, the attempt to amend should be analyzed under Rule 60(b) (and *Gonzalez*) because Ayestas supplemented a timely and pending Rule 59(e) motion outside the 28-day window specified by the rule. To be clear at the outset, neither the district court nor this one has ever suggested that the Memorandum-based claims were successive simply because Ayestas attempted to add them while the Rule 59(e) motion was pending. Nor has any court suggested that Ayestas's Rule 59(e) supplement was actually a Rule 60(b) motion. Even though they denied relief, federal courts have always treated Ayestas's attempt to amend as having occurred in a Rule 59(e) posture. *See*, *e.g.*, App.071 (analyzing Ayestas's motion as "[a] motion to alter or amend under Fed. R. Civ. P. 59(e)"); *Ayestas v. Stephens*, 817 F.3d at 894 ("Ayestas supplemented his December 16 Rule 59(e) motion to expand the basis upon which the district court should grant the motion"). And the courts treated the attempted amendment that way in part because the Director told them to. RespSuppApp.004-5 (Director citing now-invalidated *Williams* rule, 602 F.3d at 302, which held that, for purposes of

reclassifying post-judgment motions as successive petitions, Rule 59(e) motions were to be analyzed as successive petitions).

The courts never saw something problematic about the supplement because parties regularly supplement their valid and pending Rule 59(e) motions. *See*, *e.g.*, *United States v. Morales*, No. 20-2877, 2021 WL 5755079, at *1 (3d Cir. Dec. 3, 2021) (permitting supplementation on the theory that "the District Court retained jurisdiction to amend the judgment because the Rule 59(e) motion was timely filed"). The Director cannot "come close to demonstrating that the district court abuse[d] its discretion" by permitting a party to supplement its own "timely filed Rule 59(e) motion." *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1212 n.11 (10th Cir. 2012). That is because "[a] judge may enlarge the issues to be considered in acting on a timely motion under Rule 59." *Charles v. Daley*, 799 F.2d 343, 347 (7th Cir. 1986). The Tenth and Eleventh Circuits even have specific tests for permitting Rule 59(e) supplementation upon newly discovered evidence. *See*, *e.g.*, *Webber v. Mefford*, 43 F.3d 1340, 1345 (10th Cir. 1994) (incorporating test from *Chery v. Bowman*, 901 F.2d 1053, 1058 (11th Cir. 1990)). The situations in which later Rule 59(e) motions might not relate back to earlier ones involve later motions filed by *a different party*. *See* 12 MOORE'S FEDERAL PRACTICE - CIVIL § 59.31 (2023) ("An untimely Rule 59(e) motion cannot be salvaged on the grounds that the *opposing party* filed a timely motion, or because a *co-party* filed a

timely motion.") (emphasis added); *Hertz Corp. v. Alamo Rent-A-Car, Inc.*, 16 F.3d 1126, 1129 (11th Cir. 1994) (holding that an otherwise untimely Rule 59 motion does not relate back to the filing of a timely rule 59 motion *filed by another party*).

Ignoring all of this authority, the Director points to a passage in *Banister* that quotes the 28-day rule, but that reference does not contemplate scenarios where a timely Rule 59(e) motion is pending. For that reason, it does not imply that a request to supplement a pending Rule 59(e) motion outside of the 28-day window is a successive petition. Setting aside quoted language from *Banister* and *Gonzalez* having no bite on this particular question, the only case that Director does cite is *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 182 n.2 (5th Cir. 2012). Mandamus Petition at 10. But *Demahy* doesn't concern any attempt to supplement a timely and pending Rule 59(e) motion; rather, *Demahy* affirmed that the character of post-judgment motions is anchored to the time the post-judgment relief is first requested. *See id.* If anything, that principle favors Ayestas.

The Director's third "limitation," which is that *any* attempt to modify a Rule 59(e) motion must be treated as a Rule 60(b) motion subject to *Gonzalez*, violates all of the authority recited above. To make this argument, the Director quotes language from *Banister* that describes a Rule 59(e) proceeding as a "one-time effort" to amend judgment. *See* Mandamus Petition at 10-11. The quoted phrase from *Banister*—"one time effort"—does not mean that a Rule 59(e) motion cannot be

18

modified while it's pending. The Director attempts to support his no-modification principle by posing a scenario in which Ayestas "serially" amends his petition so as to forestall finality. Mandamus Petition at 11. But no litigant could undertake such serial amendment. Indeed, as soon as a court denies Rule 59(e) relief, the ability to supplement a timely and pending Rule 59(e) motion is over *because it is no longer pending.* If a litigant files a new Rule 59(e) motion when no prior one is pending, then the second post-judgment motion is a motion under Rule 60(b).

The other authority upon which the Director relies for his no-modification rule indicates that the district court got it exactly right. The Director's featured case is *Feldberg v. Quechee Lakes Corp.*, 463 F.3d 195, 197 (2d Cir. 2006). Mandamus Petition at 11. In *Feldberg*, appellants filed a "skeletal" and "placeholder" Rule 59(e) motion within the 28-day window and subsequently filed a more robust motion after the 28-day window had passed. *See id.* at 197. The Second Circuit refused to treat the subsequent motion as a supplement to the placeholder motion because the placeholder motion *did not itself qualify as a valid Rule 59(e) motion*—and *not* because there existed some rule against supplementing valid and pending Rule 59(e) motions. *See id. Feldberg* actually implies that Ayestas's supplement was part of the first Rule 59(e) motion because Ayestas's first Rule 59(e) motion was valid and pending when the supplement was filed.

The Director also relies on *Phillips v. U.S.*, 668 F.3d 433, 436 (7th Cir. 2012), for the proposition that "the time to amend the petition expires once the district court makes its decision." Mandamus Petition at 11. As with all of the Director's cited authority, however, *Phillips* did not involve supplementation of a valid and pending Rule 59(e) motion. Instead, the litigant didn't file any Rule 59 motion at all, and he filed a Rule 60(b) motion after "the time for appeal had run out." *Id.* at 435-36. And, *in the very next sentence*, the Seventh Circuit rejected the position that the Director takes here: "[a] motion to amend that is filed within the time to appeal might be treated as a continuation of" the initial habeas petition, at least insofar as it was filed while "a district court retains jurisdiction to fix problems during this post-judgment period." *Id.* at 435.

The Director's various arguments about why the attempt to amend must be analyzed under *Gonzalez* reflect the same basic misunderstanding—a misunderstanding that also accounts for the complete absence of authority supporting his interpretation of Rule 59(e). Analytically speaking, the district court's judgment is simply not final while a Rule 59(e) motion remains pending. *See Banister*, 140 S. Ct. at 1703 ("The filing of a Rule 59(e) motion within the 28-day period suspends the finality of the original judgment for purposes of an appeal.") (internal quotation marks omitted). An amendment attempted while a Rule 59(e) motion is pending doesn't violate finality because, during that pendency, there is no

final judgment. And it certainly doesn't transform the Rule 59(e) motion into a Rule 60(b) motion, which would subject it to the jurisdictional strictures of 28 U.S.C. § 2244(b).

### B. There Is No "Clear And Indisputable Error" In Refusing To Treat The Rule 60(B) Motion As A Successive Petition.

The Director argues that the Rule 60(b) motion is a successive petition, no matter what the status of the initial attempt to amend. Mandamus Petition at 7-11. The Director's position, however, is not clearly and indisputably correct; in fact, it's wrong under this Circuit's clear precedent. With respect to Rule 60(b) motions in habeas cases, *Gonzalez* distinguishes between new claims and procedurally foreclosed claims as follows:

> In most cases, determining whether a Rule 60(b) motion advances one or more "claims" will be relatively simple. A motion that seeks to add a new ground for relief . . . will of course qualify. A motion can also be said to bring a "claim" if it attacks the federal court's previous resolution of a claim on the merits, since alleging that the court erred in denying habeas relief on the merits is effectively indistinguishable from alleging that the movant is, under the substantive provisions of the statutes, entitled to habeas relief. That is not the case, however, when a Rule 60(b) motion attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings.

545 U.S. at 532. *Gonzalez* then identified categories of non-merits rulings that are permissibly challenged under Rule 60(b): (1) those that "precluded a merits determination"; and (2) those that reflect a "defect in the integrity" of the proceedings, including those resulting from misrepresentations to the court. 545 U.S.

at 532 n. 4-5. The Fifth Circuit recognizes that these are separate "circumstances in which a district court may properly consider a Rule 60(b) motion in a § 2254 proceeding." *Gilkers v. Vannoy*, 904 F.3d 336, 344 (5th Cir. 2018). Ayestas argued that his Rule 60(b) motion is not a successive petition under *Gonzalez*, and the district court agreed. App.169 ("Ayestas's current Rule 60(b) Motion attacks the court's prior jurisdictional ruling that precluded adjudication on the merits. Therefore it is not a successive petition.").[8]

Even though the Director doesn't acknowledge its existence, Fifth Circuit precedent unequivocally establishes that habeas claimants can use Rule 60(b)(6) motions to attack orders refusing amendment. In *Uranga v. Davis*, 893 F.3d 282, 284 (5th Cir. 2018), the habeas claimant filed a post-judgment motion to challenge an order denying leave to amend his habeas petition.[9] *Uranga* analyzed *Gonzalez* and determined that the claimant "did not seek to add a new ground for relief, nor did he attack the district court's previous resolution of a claim on the merits. Rather, he asserted that a previous ruling (the denial of his motion for leave to amend) which

---

[8] Ayestas maintains that the 2021 motion was not a successive petition both because it attacks a procedural ruling that precludes merits determination *and also* because it attacked a defect in the integrity of the proceeding.

[9] In *Uranga*, the post-judgment attack came by way of a Rule 59(e) motion and not a Rule 60(b) motion, but the Court applied *Gonzalez* to the question anyways. It did so because, for the purposes of the successive petition rules, the Fifth Circuit then observed no distinction between the two types of post-judgment motions. *See Uranga v. Davis*, 893 F.3d 282, 284 n.6 (5th Cir. 2018) ("Although Gonzalez involved a postjudgment motion under Rule 60(b), we have held *Gonzalez* applicable to postjudgment motions under Rule 59(e).") (citing *Williams*, 602 F.3d at 303).

precluded a merits determination was in error." *Id.* at 284. It is difficult to imagine a more direct refutation of the Director's assertion of clear-and-indisputable error.

Ignoring *Uranga* and other precedent,[10] the Director argues that Ayestas's Rule 60(b) motion is a successive petition because it asserts a "new" claim. Of course, Ayestas's claim does not qualify as a "new" claim under *Gonzalez*—that is, a ground for relief Ayestas did not assert in the initial proceeding. Ayestas *did* assert this claim in the initial habeas proceeding and he even moved the district court for an amendment to add it. Thus, the Director seems to be defining the claim as "new" because, in his view, Ayestas was not permitted to *formally plead* it in 2015. *Uranga* flatly forecloses this argument.[11] And it is inconsistent with any case permitting a Rule 60(b)(6) attack on an order that prevented the pleading of claims. *See e.g.*, *Butz*

---

[10] *In re Robinson* was also a case in which a federal prisoner sought and was denied leave to amend, and then challenged the order refusing amendment under Rule 60(b). 917 F.3d 856, 861 (5th Cir. 2019) (Smith, J.). If the district court here had clearly and indisputably erred, then *Robinson* would have categorically refused to entertain the challenge on the grounds that it was a successive petition. But *Robinson* didn't do that. *Robinson* did ultimately treat the Rule 60(b) motion as a successive petition, *but only because* it determined that the challenge was not really to the order denying leave to amend but to an adverse order on the merits during Robinson's direct appeal. *See id.* at 867. What follows from *Robinson* is the same rule recognized in *Uranga*: post-judgment challenges to ordinary orders denying leave to amend are not successive petitions.

[11] This Opposition does not address the Director's argument in footnote 2 of the Mandamus Petition, pertaining to whether Ayestas is entitled to post-judgment relief under the standard native to Rule 60(b)(6) itself. *See* note 4, *supra*. Suffice it to say, however, that the district court amply justified its decision that Ayestas is entitled to post-judgment relief in its extraordinary-circumstances holding. That holding reflects (1) the change in the legal landscape following *Banister*, (2) the effect of the Director's misrepresentation about the availability of the claims, and (3) the miscarriage of justice that might result from failure to address the specific claim at issue. *See, e.g.*, App.169-72; App.353-55.

*v. Mendoza-Powers*, 474 F.3d 1193, 1195 (9th Cir. 2007) (permitting Rule 60(b) attack on order dismissing habeas petition for failure to pay filing fee).

## II.  THE DIRECTOR CANNOT SHOW THAT APPELLATE RELIEF AFTER FINAL JUDGMENT IS INADEQUATE.

There is a strong presumption that "mandamus may not be resorted to as a mode of review where a statutory method of appeal has been prescribed or to review an appealable decision of record." *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 27 (1943). This presumption holds even for district-court adjudication of jurisdictional questions, at least if they "are reviewable in the regular course of appeal." *Id.* at 26. On an ordinary appeal that follows final judgment, the Fifth Circuit will be able to address any alleged jurisdictional error.

The Director's argument is centered largely on the inconvenience of litigating non-jurisdictional issues, "[b]ut that inconvenience is one which [courts] must take it Congress contemplated in providing that only final judgments should be reviewable." *Roche*, 319 U.S. at 30; *see also In re Gee*, 941 F.3d 153, 165-66 (5th Cir. 2019) ("It is always true that an erroneous failure to dismiss will result in some inconvenient discovery and unnecessary litigation. But that inconvenience is one which we must take it Congress contemplated in providing that only final judgments should be reviewable.") (internal quotation marks omitted). As one member of this Panel put it in a recent Fifth Circuit opinion, "[t]he appeals process provides an adequate remedy in almost all cases, even where defendants face the prospect of an

expensive trial. Mandamus is appropriate only where an error is *truly irremediable* on ordinary appeal." *DePuy Orthopaedics*, 870 F.3d 345 at 352-53 (Smith, J.) (internal quotation marks and citations omitted).

Relying on *Gee*, the Director claims that the "truly irremediable" harm is damage to "state sovereignty" that would result from participating in habeas proceedings as a litigant. Mandamus Petition at 17 (citing *Gee*, 941 F.3d at 167-68). *Gee*, however, explains the difference between a sovereignty harm that is "truly irremediable" and the harm here. In *Gee*, abortion providers filed a § 1983 claim that alleged that Louisiana's laws and regulations pertaining to abortion violated various constitutional provisions. 941 F.3d at 171. When the district court refused to decide the jurisdictional issue, the state sought mandamus relief. *See id.* at 159. While *Gee* ultimately refused mandamus relief, the opinion emphasized that "[t]his is an extraordinary case" because the providers "seek a federal injunction against *virtually all of Louisiana's legal framework for regulating abortion*." 941 F.3d at 156 (emphasis added). *Gee* recited a "combination of five federalism concerns making this a special circumstance":

> (1) A sovereign State is requesting the writ; (2) Plaintiffs seek sweeping review of an entire body of state law; (3) Plaintiffs seek structural injunctions that would give the district court de facto control of state law; (4) the type of discovery waiting on the other side of Louisiana's motion to dismiss is categorically different than what awaits an ordinary civil litigant; and (5) the ordinary civil litigant cannot demand attorneys' fees from the State's taxpayers.

941 F.3d at 166. *Gee* was thereby careful to eliminate the possibility that a party seeking mandamus could superficially invoke "state sovereignty" to obtain relief. Under *Gee*, the Director must do more than intone generic concerns about state sovereignty.

Without diminishing the substantial interest that Texas has in the integrity of its convictions, the entire premise of 28 U.S.C. § 2254 and the Habeas Corpus Act of 1867 is that state sovereignty is not a trump card. The damage to sovereignty that comes from entertaining a post-judgment motion in a single habeas case involves nothing like the "combination of five federalism concerns making [*Gee*] a special circumstance." 941 F.3d at 166. Ayestas does not "seek[] judicial review of an entire body of state statutory and regulatory law," nor does he "seek[] a structural injunction and continuing federal supervision of" a state. 941 F.3d at 167. The underlying issue here is a constitutional defect in a single capital conviction, and the remedy is simply a vacatur of a single criminal judgment.

According to the Director, however, federal habeas process interferes with state sovereignty, and interference with state sovereignty triggers mandamus relief. But *Gee*'s cautious language reflects a crucial warning: allowing garden-variety "sovereignty concerns" to underwrite mandamus relief is bad policy. The Director's view of sovereignty would result in mandamus proceedings every time the state loses an interlocutory argument that is potentially dispositive—e.g., the limitations period,

procedural default, and § 2254(d), to name but a few. In such a universe, mandamus would hardly facilitate swift habeas adjudication. Instead, proceedings in the district court would be stayed for one piece of mandamus litigation after another. *Cf. Calderon v. U.S. Dist. Ct. for Cent. Dist. of California*, 163 F.3d 530, 534-35 (9th Cir. 1998), *abrogated on other grounds by Woodford v. Garceau*, 538 U.S. 202 (2003) ("[T]he cost and delay occasioned by such erroneous rulings, in the aggregate, are quite significant and can be quite burdensome to the individual litigant. If such harm could support mandamus, however, then mandamus would no longer be an extraordinary remedy and we will have effectively abandoned our tradition against piecemeal appeals."). The Director's preferred rule would also create a bizarre post-conviction asymmetry in which § 2254 cases (involving state prisoners) would be serialized mandamus affairs before this Court, but § 2255 cases (involving federal prisoners) would proceed without any such interruptions.

Aside from the issue of sovereignty, the Director mentions two other things that, in his view, support the extraordinary exercise of mandamus power. The first is the prospect of execution delay. *See* Mandamus Petition at 18. But, as is the case with respect to sovereignty, there is such delay *every* time a court refuses to make a dispositive ruling in the State's favor. The Director cites no support for the delay-justifies-mandamus proposition. What little decisional law Ayestas can locate on the question cuts strongly in the *other* direction. As the Ninth Circuit stated in *Calderon*:

> The inevitable prejudice that will accrue to the State in such cases is that executions will sometimes be delayed because the district court mistakenly tolled the one-year limitations period and proceeded to consider the petitioner's claims on the merits, when it should not have done so. This kind of delay is going to happen often enough that, if this circumstance were sufficient to support the issuance of a writ of mandamus, the writ would no longer be an extraordinary remedy. It would become all too commonplace and almost routine in death penalty cases.

163 F.3d at 535. The Director's complaints about delay are also vexing because it is *the Director* who delayed: (1) initial litigation of the claim by suppressing the Siegler Memorandum; (2) post-conviction litigation of the claim by misrepresenting its availability; and (3) seeking mandamus relief on an order almost two years old. *See* Part III, *infra* (discussing the Director's unclean hands as it relates to delay).

The second tack-on argument the Director makes about the inadequacy of appellate remedies involves complaints about some of the discovery requests pending before the district court. *See* Mandamus Petition at 18-19. To be clear, the Director is referring to the *requested* scope of authorization that Ayestas made by motion. The district court has not yet fixed the scope of that discovery; it is waiting for the Director and third parties to file objections. SuppApp.044. Even if concerns about discovery orders could trigger mandamus relief, mandamus consideration of such orders remains premature until the district court formally fixes the scope of the discovery at issue.

## III.   THE DIRECTOR CANNOT SHOW THAT MANDAMUS IS APPROPRIATE UNDER THE CIRCUMSTANCES.

Mandamus relief requires the Director to show that, as an equitable matter, this Court should exercise discretionary authority in the party's favor. *See Cheney*, 542 U.S. at 381; *DePuy Orthopaedics*, 870 F.3d at 350. Even if the Director were to show everything else he needs to prevail in a mandamus proceeding, his request should still be denied based on his rather extraordinary litigation behavior.

Start with his delay. The district court granted Rule 60(b) relief and reopened the judgment nearly twenty months ago, on August 12, 2021. App.172-73. The Director didn't seek mandamus relief then. This Court ordered the filing of the first Amended Petition 16 days later, on August 30. App.180. Still, no request for mandamus relief. Nor did the Director seek mandamus relief after (1) Ayestas filed his First Amended Petition on September 28, 2021; (2) the district court denied his motion for reconsideration on the jurisdiction question on November 2, 2021; (3) the parties jointly proposed a scheduling order on November 12, 2021; or (4) the Director filed and supplemented his answer on March 16 and June 7, 2022, respectively. The Director instead spent the entire time attempting to persuade the district court to reject the First Amended Petition on various non-jurisdictional grounds. *See* App.220-98 (filing of Answer containing merits-based and procedural defenses); RespSuppApp.054-59 (Director adding arguments under *Shinn v. Ramirez*, 142 S. Ct. 1718 (2022)). Such delay alone precludes mandamus relief. *See*

29

*Cheney*, 542 U.S. at 379 (holding that a laches bar to mandamus relief is appropriate where government litigation exhibits "neglect or delay"); *Chapman v. Bd. of Cnty. Comm'rs of Douglass Cnty.*, 107 U.S. 348, 355 (1883) ("The writ may well be refused when the relator has slept upon his rights for an unreasonable time[.]").

The Director's delay is but one reason why he doesn't satisfy this third mandamus prong. After all, these claims sit in a Rule 60(b) posture only because the Director's *repeated* misrepresentations regarding the availability of the Siegler Memorandum tainted prior inquiry into reasonable diligence. *See supra* at 5, 6 n.2. The Director also delayed the discovery process by refusing to file objections to the moved-for discovery by the "no exceptions" deadline of April 17. SuppApp.002-04; *see also* SuppApp.035 ("The Court ordered the respondent to file any objections to discovery within 30 days [of March 16, 2023].") (vacated pursuant to stay). The district court generously set a new schedule giving the Director another opportunity to assert objections. SuppApp.044. Astonishingly, when the Director sought a stay in this Court, he narrated the discovery schedule as though *Ayestas* had blown the April 17 deadline and the Director accused *the district court* of truncating his time to file objections. Dkt. 22-1 at 4 (describing the district court's order as a decision to "accelerate discovery deadlines," thereby violating FRCP 45(d)(2)(B)); *id.* at 3 (describing discovery filings as though Ayestas had violated April 17 deadline).

30

In addition to the many other reasons for refusing a stay, this Court should not award the Director's ongoing gamesmanship.

## CONCLUSION

For the above-stated reasons, this Court should deny the mandamus petition.

Dated: May 10, 2022                              Respectfully submitted,

                                                 */s/ Lee B. Kovarsky*

Lee B. Kovarsky
Phillips Black, Inc.
727 East Dean Keeton Street
Jon 5.231
Austin, TX 78705
(434) 466-8257
l.kovarsky@phillipsblack.org

Sheri Lynn Johnson
Cornell Law School
240 Myron Taylor Hall
Ithaca, NY 14853
(607) 255-6478
slj8@cornell.edu

Attorneys for Petitioner

## CERTIFICATE OF SERVICE

I hereby certify that on May 10, 2023, an electronic copy of the foregoing document was filed with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit and served on counsel for Petitioner via the appellate CM/ECF system.

*/s/ Lee B. Kovarsky*
Lee B. Kovarsky

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit and the word limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 7757 words, excluding the parts of the brief exempted by Rule 32(f). The brief also complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Times New Roman for the body of the brief, and 12-point Times New Roman for footnotes) using Microsoft Word. Microsoft Word was also used to calculate the word count.

*/s/ Lee B. Kovarsky*
Lee B. Kovarsky